A98A0788. GREMILLION v. THE STATE.
(504 SE2d 265)

SMITH, Judge.
Following a bench trial, James Brent Gremillion was convicted of

trafficking in cocaine, possession of psilocybin mushrooms, and possession of marijuana with intent to distribute. He appeals the order of conviction as well as the trial court's denial of his motion to suppress. We find no error and affirm.

On October 7, 1996, officers from the Athens-Clarke County Drug Task Force executed a search warrant at Gremillion's apartment. The officers discovered three plastic bags containing 82.3 grams of cocaine inside an overnight bag, a clothing bag containing 11 packages of marijuana totalling 441.9 grams or 15.5 ounces, and a plastic bag containing six grams of psilocybin mushrooms. The officers also discovered a set of scales with a white, powdery substance on it and a file cabinet containing $4,142.

1. During the hearing on Gremillion's motion to suppress, Officer George Garrison, who submitted an affidavit to the magistrate in support of the warrant, acknowledged that the individual who provided him with information concerning contraband inside Gremillion's residence had a criminal record, had been paid for information on two previous occasions, and had been granted leniency on criminal charges in the past in exchange for providing information.[1] Relying in large part on *Perkins v. State*, 220 Ga. App. 524 (469 SE2d 796) (1996), Gremillion contends Garrison's failure to provide this information to the magistrate denied the magistrate the "opportunity to make a fair assessment of the reliability, veracity and basis of knowledge of the confidential informer," and that the evidence seized as a result of the execution of the warrant should have been suppressed.

It is true that an informant's veracity and basis of knowledge are "major considerations" in the "common sense" analysis to be employed by the magistrate in determining whether a fair probability exists that contraband or evidence of a crime will be found in a particular place. *Kessler v. State*, 221 Ga. App. 368, 369-370 (471 SE2d 313) (1996). And while the "better practice" under *Perkins* would have been for Officer Garrison to inform the magistrate of the informant's criminal history, prior payments, and leniency in past cases, this failure is not dispositive on the issue of the informant's reliability. See generally *Kessler* at 370. As discussed in *Kessler*,[2] three types of information may be provided to enable a magistrate to determine whether an informant is reliable: "the type of information previously

---

[1] The evidence is not disputed that at the time the informant approached Garrison, no criminal charges were pending against the informant, and no promises had been made to the informant regarding any criminal charges. In addition, although the informant had been paid in the past for information, the informant was not paid with regard to this case.

[2] We note that the appellant in *Kessler* enumerated as error the trial court's refusal to grant his motion to reveal the informant's identity, an issue slightly different from that enumerated here. But as here, it was necessary to reach the issue of the affiant's failure to reveal the fact that the informant was a convicted felon.

supplied by the informant, the use to which the information was put and the elapsed time since the information was furnished." (Citation and punctuation omitted.) Id.

Here, as in *Kessler*, information concerning each of these factors was presented to the magistrate. Garrison stated in the affidavit that the informant had provided information in the five years in which he had known the informant "on at least four (4) occasions that led to the issuance of search warrants, the recovery of controlled substances, and the arrest of five people" on drug charges. He also stated that other information provided by the informant had proven to be accurate. In addition, the affidavit showed that the information given by the informant for the issuance of the warrant for Gremillion's apartment had been supplied over the previous two days. Compare *Hockman v. State*, 226 Ga. App. 521, 522 (2) (487 SE2d 102) (1997) (physical precedent only) in which the affidavit contained only "conclusory allegations" failing to establish the informant's reliability.

Moreover, the record contains no evidence that the affidavit contained deliberate falsehoods, that Garrison made it with reckless disregard for the truth, or that Garrison "consciously omitted material information which, if it had been included in the affidavit, would have been indicative of the absence of probable cause." *Kessler*, supra at 371. Compare *Peters v. State*, 213 Ga. App. 488 (445 SE2d 290) (1994); *Redding v. State*, 192 Ga. App. 87 (383 SE2d 640) (1989). Finally, even if the omitted criminal history, past "deals," and past payments had been included, the affidavit still contained sufficient evidence to support the magistrate's conclusion that the informant was reliable and that probable cause existed. *Kessler*, supra at 371. "Taking a common sense approach to the evaluation of the affidavit, we find that it was sufficient to demonstrate the informant's reliability." Id. at 370-371. The trial court accordingly did not err in denying Gremillion's motion to suppress.

2. Gremillion argues as well that the trial court improperly limited his cross-examination of Garrison by refusing to allow questions addressing the following issues: the nature of the informant's criminal record, including the number of convictions; the informant's motivation for supplying information about Gremillion; past "deals" between the State and the informant; whether the informant was currently on probation or parole; whether the informant had been involved in any drug transaction with Gremillion; and the circumstances under which the confidential informant observed the contraband. He maintains that these issues reflected on the basis of knowledge and veracity of the informant.

Although a defendant is entitled to a thorough and sifting cross-examination of a witness, "the extent of cross-examination can be curtailed if the inquiry is not relevant or material, and such restric-

tion lies within the discretion of the trial court which will not be disturbed on appeal unless manifestly abused." (Citations and punctuation omitted.) *Duckworth v. State*, 223 Ga. App. 250, 253 (1) (477 SE2d 336) (1996).

The trial court limited Gremillion's cross-examination concerning the issues listed above in large part because Garrison's answers to the questions could reveal the identity of the informant. But the court did not completely restrict cross-examination concerning issues relating to the informant's reliability. The court permitted questions concerning whether current criminal cases were pending against the informant, as well as questions concerning whether the informant had been paid for information in the past or had been promised leniency in any pending criminal case.

In addition, the court allowed Gremillion to explore the issue of the informant's motivation through questions such as whether the informant showed bias, hatred, or jealousy toward Gremillion or whether the informant provided information because of the informant's belief that "what [Gremillion] was doing was wrong." In an obviously conscientious attempt to allow Gremillion to conduct a thorough investigation but still protect the informant's identity, the court even conducted an off-the-record meeting with Garrison so that Garrison could fully explain his belief concerning the informant's motivation. As a result of that meeting, the court permitted Garrison to state the informant's motivation insofar as statements concerning this motivation did not reveal the informant's identity. Garrison stated that the informant's motivation arose "because we had treated this person right in the past that it felt obligated to come to us." The trial court did not permit Gremillion to question Garrison concerning any drug transactions involving the informant or the circumstances under which the informant observed the contraband, but given the trial court's legitimate concern with protecting the informant's identity in addition to the court's careful attention to Gremillion's desire to explore issues relating to the informant's veracity and reliability, we cannot say that the court "manifestly abused" its discretion in limiting Gremillion's cross-examination of Garrison.

3. Gremillion also contends the evidence was insufficient to convict him of possession of marijuana with intent to distribute because no testimony was elicited from anyone that the amount of marijuana seized was consistent with distribution.

Mere possession of contraband alone will not support a conviction for possession with intent to distribute. See, e.g., *Parris v. State*, 226 Ga. App. 854, 856 (487 SE2d 690) (1997). But in the absence of expert testimony concerning the amount of contraband associated with distribution, intent to sell may be proven through additional evidence including "scales, drug paraphernalia, large amounts of

cash, [and] division of drugs into individual packages." Id. Here, officers seized scales, cash in the amount of $4,142, and marijuana individually packaged in 11 plastic bags. Construing this evidence to uphold the verdict, as we must, see *Sams v. State*, 197 Ga. App. 201, 202 (1) (397 SE2d 751) (1990), we conclude that the State presented sufficient evidence from which the trial court could conclude that Gremillion possessed the contraband with intent to distribute. See generally *Wright v. State*, 154 Ga. App. 400, 401-402 (268 SE2d 378) (1980).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 13, 1998 — 

*James D. Crowe*, for appellant.

*Harry N. Gordon, District Attorney, William W. Tanner, Assistant District Attorney*, for appellee.