A05A1134. ROGERS v. THE STATE.
(618 SE2d 166)

SMITH, Presiding Judge.

Following her conviction at a bench trial of possession of marijuana with intent to distribute, Judy Joyce Rogers[1] appeals. In her sole enumeration of error, Rogers asserts that the trial court erred in denying her motion to suppress. We disagree and affirm.

Three principles inform an appellate court's review of a trial court's ruling on a motion to suppress evidence found and seized while executing a search warrant.

> First, the trial [court] sits as the trier of facts, and [its] findings are analogous to a jury verdict and should not be disturbed if there is any evidence to support the findings. Second, the trial court's decisions on the credibility of witnesses and questions of fact must be accepted unless clearly erroneous. Third, the appellate court must construe the evidence most favorably to the upholding of the trial court's findings and judgments.

(Citations, punctuation and footnotes omitted.) *Roberson v. State*, 246 Ga. App. 534, 535-536 (540 SE2d 688) (2000).

So viewed, the record shows that Lieutenant Clay Carroll of the Southwest Georgia Drug Task Force applied for a warrant to search Rogers's residence. When the warrant was executed, officers found and seized a quantity of marijuana located in a dresser drawer in the master bedroom and another quantity of marijuana in the kitchen, in a basket on top of the refrigerator. Rogers arrived at her residence during the search, and she was arrested for possession of marijuana with intent to distribute. After reading Rogers her rights, Carroll asked her if any other marijuana was in the residence. Rogers answered affirmatively and showed Carroll two bags of marijuana in another bedroom. She also pointed out her scales and turned over the key to a metal box containing 24 hundred dollar bills. In a subsequent

---

[1] Rogers was also known as Joyce Womble.

interview, after signing a waiver of her *Miranda* rights, Rogers admitted she had been selling marijuana.

Rogers's argument focuses on alleged deficiencies in the affidavit provided by Carroll in support of his application for the warrant. She argues that information in the affidavit was both stale and unreliable.

The affidavit recited that Carroll's information came from a reliable informant who wished to keep his identity confidential and had known Rogers for several years. Carroll stated in the affidavit that according to the informant, who had been in Rogers's home within the previous five days, Rogers told the informant that she would have a quantity of marijuana available for sale on December 7, 2002, a few days after their conversation. The source also told Carroll that he had spoken with several people over the past several years who told him they had purchased marijuana from Rogers. Carroll believed the information to be reliable for several reasons: He had known the informant for about six months; in the past three months the informant had given him information that led to at least one drug arrest; on another occasion, this informant had given him similar information that led to the recovery of illegal drugs; and the informant provided him with information that was very detailed, leading Carroll to believe that the informant had first-hand knowledge. Carroll indicated in the affidavit that the informant was being paid and had a criminal record, with numerous felony and misdemeanor arrests.

Carroll independently corroborated this information by checking with a fellow officer, who informed Carroll that in the past year he had received information from another source that Rogers had been selling marijuana from her residence. The other officer also checked EMC records and learned that Rogers resided at the address given in the affidavit. The two officers also drove past Rogers's residence to verify its location and incorporated this information into the warrant so that the residence could be found when the warrant was executed.

Carroll declined to answer when asked to identify the information the informant previously had given him, stating that he felt "it could tend to identify the source by showing a relationship between the previous search warrant and this search warrant." The magistrate issued the warrant, and it was executed on December 8, 2002, one day after the date the informant indicated Rogers was to have received the marijuana for sale.

Rogers's contention that the information was stale is belied by the record. Even though the record shows that some information provided to the magistrate could possibly have been a year old, that information was given only to corroborate and support the fresh information supplied to Carroll by the informant. It is clear that the informant had been at Rogers's home at most five days before the date

on the affidavit, and that Rogers had told the informant that she would be getting a supply of marijuana for sale within a few days.

Rogers's contention that the information supplied by the informant was insufficiently reliable to constitute probable cause for issuing the warrant is similarly faulty. The trial court acknowledged that the affidavit included some conclusory allegations, but it found that the remainder of the affidavit was sufficient for the magistrate to find probable cause. We agree.

Proper analysis is that mandated by *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by this state in *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984). "[T]he reliability of the informant is a relevant consideration. [Cit.]" *Elom v. State*, 248 Ga. App. 273, 274 (546 SE2d 50) (2001). The test is whether the magistrate was given sufficient information to show a reasonable probability that contraband would be found. Id. "[A]ttesting officers and magistrates should make every effort to see that supporting affidavits reflect the maximum indication of reliability." (Citations and punctuation omitted.) *Gilliard v. State*, 273 Ga. App. 347, 349 (615 SE2d 187) (2005).

Of course, confidential informants are usually not upstanding citizens whose veracity is unquestioned. The affidavit here acknowledged that the informant had a criminal history and was being paid. Nevertheless, Carroll had known the informant for approximately six months, and in that time the informant had proved reliable by assisting Carroll in recovering illegal drugs and in making at least one arrest. The informant had not merely "heard" that Rogers was selling marijuana; he had personal knowledge learned from Rogers herself that she would have marijuana for sale on a date certain. These facts alone were sufficient indicia of reliability. In addition, another officer had received information from a different source that Rogers had been selling marijuana at her home, and certain details, including the location of Rogers's residence, were corroborated by Carroll's own investigation. Based on this evidence, the magistrate did not err in issuing the warrant, and the trial court did not err in denying Rogers's motion to suppress.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JULY 21, 2005 — ■

*Gilbert J. Murrah*, for appellant.

*J. Brown Moseley, District Attorney, Charles M. Stines, Assistant District Attorney*, for appellee.