A09A1639. HAWKINS v. THE STATE.
(694 SE2d 132)

BARNES, Judge.

Luther Jerome Hawkins was found guilty of possession of methamphetamine, and following the denial of his motion for new trial, he appeals the denial of his motion to suppress. Hawkins contends that the trial court erred in denying his motion to suppress because the information providing the basis for the search warrant was stale, the confidential informant was unreliable, and the secondary search of his bodily fluids should have been suppressed because the initial search of the residence was invalid. He also contends that the trial court erred in denying his motion for mistrial because the State impermissibly elicited evidence of Hawkins' character at trial. Three principles inform an appellate court's review of a trial court's ruling on a motion to suppress evidence found and seized while executing a search warrant.

> First, the trial [court] sits as the trier of facts, and [its] findings are analogous to a jury verdict and should not be disturbed if there is any evidence to support the findings. Second, the trial court's decisions on the credibility of witnesses and questions of fact must be accepted unless clearly erroneous. Third, the appellate court must construe the evidence most favorably to the upholding of the trial court's findings and judgments.

(Citations, punctuation and footnotes omitted.) *Roberson v. State*, 246 Ga. App. 534, 535-536 (1) (540 SE2d 688) (2000).

The search warrant was supported by the affidavit of an agent with the Cherokee County Multi-Agency Narcotics Squad ("C-MANS"). The agent averred that a confidential informant who had assisted C-MANS in "prior narcotics investigations leading to numerous arrests and seizures of $2,970 of methamphetamine and marijuana" contacted her on August 19, 2005 and said that she overheard a telephone conversation about a "methamphetamine cook." The informant said that the conversation was between "Sharon" and another individual and that Sharon said that she was planning a methamphetamine cook "later that day . . . at Lori and Hawk's [identified as Hawkins] residence around 8:00 or 9:00 pm."

The agent and the informant drove to the location, and she positively identified it as where Hawkins and his girlfriend, referred to as Hawk and Lori, lived. She also identified the car parked at the home as the couple's, and police later confirmed that the tag was registered to Hawkins' girlfriend. The agent was also familiar with Hawkins because of an earlier investigation of a methamphetamine lab involving the couple.

Based on the information, the magistrate found probable cause to issue a search warrant for methamphetamine and related objects at Hawkins' residence. That same day, August 19, C-MANS agents executed the warrant and recovered glass pipes commonly used to smoke methamphetamine and hand-rolled cigarettes believed to contain marijuana. They also recovered an Altoid can containing methamphetamine from the person of one of the co-defendants. The agent then obtained a search warrant for Hawkins' bodily fluids based on the contraband and statements from both defendants that they had smoked methamphetamine that same day. The samples tested positive for methamphetamine.

Hawkins was charged with possession of methamphetamine based on the bodily fluids search, and possession of less than an ounce of marijuana. Following a jury trial, he was found guilty of possession of methamphetamine. The trial court directed a verdict on the marijuana charge.

1. Hawkins first contends that the trial court erred in denying his motion to suppress because the information in the search warrant was stale. He argues that the information in the affidavit about the telephone conversation referencing a methamphetamine cook did not contain sufficient information to suggest a fair probability that contraband would be found at the location specified in the warrant. He argues that the affidavit did not provide a specific date on when the methamphetamine cook would take place, only that it would be later that day, and thus, the information was stale,

as it was impossible to tell exactly when the manufacturing of the methamphetamine would occur.

> Time is assuredly an element of the concept of probable cause. However, the precise date of an occurrence is not essential. Rather, the inquiry is as to whether the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant.

(Citations and punctuation omitted.) *Hale v. State*, 220 Ga. App. 667, 669 (2) (c) (469 SE2d 871) (1996). Here, the affidavit stated that

> the affiant received information from reliable confidential informant . . . pertaining to a methamphetamine lab at [an address], the residence of Lori and Hawk. [The informant] informed the affiant that he/she overheard a telephone conversation pertaining to manufacturing methamphetamine at the above residence. . . . [The informant] stated he/she heard Sharon speaking to an individual about the methamphetamine cook she was to perform later that day. Sharon stated that all of the preparation work for the cook was complete. Sharon said she was going to Horse Town in order to purchase the iodine needed for the cook. Sharon said that she was going to be cooking at Lori and Hawk's residence around 8:00 or 9:00.

The officer also averred that similarly, in November of 2004, Hawkins was involved in another methamphetamine lab at another residence that he shared with the co-defendants.

The warrant in this case sought, among other things, methamphetamine, documents, books, ledgers, and records pertaining to the making and packaging of controlled substances, components of a methamphetamine laboratory, and items used in manufacturing methamphetamine.

Here, in reviewing the totality of the circumstances, based on the affidavit, the magistrate was authorized to conclude that, at some point on or about August 19, based on a conversation the informant overheard, methamphetamine was going to be manufactured at Hawkins' house. Regardless of whether the informant actually heard the information on August 19, the information provided a substantial basis for believing that, when the magistrate issued the warrant, methamphetamine was being manufactured there.

Thus, we conclude that the informant's information was not stale, and the trial court did not err in denying the motion to suppress on that basis.

2. Regarding Hawkins' claim that the affidavit supporting the issuance of the search warrant did not establish probable cause because the information provided by the confidential informant was not sufficiently corroborated,

> the sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citation and punctuation omitted.) *State v. Hall*, 276 Ga. App. 769, 774 (624 SE2d 298) (2005). Here, the basis for the informant's knowledge was that she overheard one of the co-defendants discuss that there was going to be methamphetamine at the address to be searched. Evidence of the informant's reliability included that the informant had been known to the deputy and that the informant had previously provided information to C-MANS leading to the seizure of methamphetamine and marijuana and to several drug-related arrests. See *Copeland v. State*, 273 Ga. App. 850, 852 (1) (a) (616 SE2d 189) (2005) (informant's reliability may be established by showing informant has in the past provided information leading to the seizure of contraband); *Crawford v. State*, 233 Ga. App. 323, 327 (4) (504 SE2d 19) (1998) (affidavit showed informant had been reliable in past by providing information leading to the arrest of 10-12 persons). While

> [t]he better practice would have been for the officer to include *all* information relating to the informant's reliability, including [her] payment status and criminal history. . . . [N]othing indicates that the officer's affidavit contained deliberate falsehoods, that the officer made it with reckless disregard for the truth, or that he consciously omitted material information which, if it had been included in the affidavit, would have been indicative of the absence of probable cause. Moreover, even if the officer had given this additional information to the magistrate, the informant's previous work with police would have provided a substantial basis for deeming [her] reliable.

(Punctuation omitted.) *Zorn v. State*, 291 Ga. App. 613, 615 (1) (662 SE2d 370) (2008).

3. Hawkins also contends that the trial court erred in failing to suppress evidence discovered pursuant to the second search warrant for his bodily fluids because the warrant was based on the illegal search warrant issued for his residence. As noted in Division 2, however, the trial court did not err in denying Hawkins' motion to suppress evidence from the search of his residence. Thus, this contention is meritless under Hawkins' tainted fruit of the poisonous tree analysis.

4. Hawkins last contends that the trial court erred in failing to grant his motion for mistrial when the State impermissibly elicited evidence of his character during trial. Whether to grant or deny a motion for mistrial is necessarily a matter largely within the discretion of the trial court, and the trial court's denial of a motion for mistrial should not be disturbed by the appellate courts unless a mistrial is essential to the preservation of the right to a fair trial. *Hamilton v. State*, 274 Ga. 582, 586 (7) (555 SE2d 701) (2001).

The exchange at issue came during testimony from a C-MANS agent who, when asked what Hawkins was arrested for, responded "possession of methamphetamine, possession of marijuana less than one ounce, and I believe there was a weapons charge." Hawkins moved for a mistrial on the grounds that reference to the weapons charge had improperly placed his character into evidence, as he was not indicted or on trial for the weapons charge. After removing the jury, the trial court heard arguments from both sides, denied the motion, and instructed the jury to disregard the testimony regarding the weapons charge because Hawkins was not charged in the indictment with the offense.

> When prejudicial matter is placed before the jury in a criminal case, the trial judge must decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions. Here, the trial judge acted immediately, ruled out the offensive testimony, and properly instructed the jury not to consider the testimony in its deliberations. Under the facts of this case, we cannot say that this amounted to an abuse of discretion.

(Citations omitted.) *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 29, 2010 —
RECONSIDERATION DENIED APRIL 12, 2010 — 

*Barry W. Bishop*, for appellant.
*Garry T. Moss, District Attorney, Sara A. Thompson, Assistant District Attorney*, for appellee.